UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| UNITED STATES OF AMERICA, | Criminal No. 3:11cr116 (JBA) |
|---|---|
| *v.* | |
| RICHARD POUPART, <br> *Defendant.* | October 18, 2012 |

RULING ON DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA

On September 5, 2012, Defendant, proceeding *pro se*, but assisted by stand–by counsel, moved [Doc. # 172] to withdraw his guilty plea.  Defendant alleges that he was coerced by his attorney and the Government into pleading guilty, and that he received ineffective assistance of counsel in several respects, which rendered his plea unknowing and involuntary.  For the following reasons, Defendant's motion will be denied.

I.      Background

On August 6, 2010, Defendant Richard Poupart was arrested on a federal criminal complaint charging him with transportation of child pornography.  (Aff. in Supp. of Compl. [Doc. # 4–1] at 2.)  This arrest stemmed from a local police investigation of allegations that Mr. Poupart had sexually assaulted his minor twin nieces.  On June 30, 2011, Defendant was indicted by a federal grand jury on one count of transportation of child pornography in violation of 18 U.S.C. § 2252(a)(1) and one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B).  (Indict. [Doc. # 56].)  Defendant was initially represented by a Federal Defender, but upon a breakdown in the working relationship between Mr. Poupart and his counsel, the Court appointed substitute counsel, and thereafter

supplemented his representation by appointment of a second attorney.  (*See* Doc. ## 13, 31, 33, and 103.)

On March 28, 2012, the Government proposed a plea agreement to Mr. Poupart, which he considered over the course of several days and, after conferring with counsel, ultimately rejected. (*See* Exs. A, B, and C to Gov't's Opp'n [Doc. # 173].)  However, on May 25, 2012, several days before jury selection, the Government again offered the same agreement to Defendant during a reverse proffer session.  After consulting with his attorneys for approximately an hour and calling his wife, Mr. Poupart decided to accept the agreement. (*See* Gov't's Opp'n at 4.)    The parties immediately informed the Court that Defendant wanted to change his plea, and the Court held a change of plea hearing that afternoon, approximately two hours after Mr. Poupart first decided to accept the agreement.  (*See* Minute Entry [Doc. # 145].)  Defendant's sentencing was originally scheduled for August 21, 2012, but the Court granted two motions to continue until October 30, 2012.   Defendant moved a third time to continue sentencing (*see* Mot. to Continue [Doc. # 156]), and shortly thereafter, his attorney moved to withdraw based on a breakdown in the attorney–client relationship (*see* Mot. to Withdraw [Doc. # 163]).[1]  The Court denied Defendant's motion to continue sentencing, and at a hearing on counsel's motion to withdraw, Mr. Poupart indicated that he intended to move to withdraw his guilty plea.  (Aug. 21, 2012 Hr'g Tr. [Doc. # 171] at 12.)  The Court appointed stand–by counsel to assist him with his proposed

---

[1] After Defendant's guilty plea, the Court directed that one of the two appointed attorneys withdraw as multiple attorneys were no longer necessary if the case was not going to trial.

motion.  On September 5, 2012, Defendant filed the instant motion to withdraw his guilty plea.

II.      Discussion

Under Rule 11(d)(2)(B) of the Federal Rules of Civil Procedure a defendant may withdraw a plea of guilty if "the defendant can show a fair and just reason for requesting the withdrawal."  "A defendant who seeks to withdraw his or her plea bears the burden of showing that there are valid grounds for withdrawal.  The fact that a defendant has a change of heart prompted by a reevaluation of either the Government's case against him or the penalty that might be imposed is not a sufficient reason to permit a withdrawal of plea." *United States v. Schmidt*, 373 F.3d 100, 102 (2d Cir. 2004).  The Second Circuit has identified several factors that a district court may consider in determining whether a defendant has shown a "fair and just reason" for the withdrawal of his plea:

> (1) whether the defendant has asserted his or her legal innocence in the motion to withdraw the guilty plea; (2) the amount of time that has elapsed between the plea and the motion (the longer the elapsed time, the less likely withdrawal would be fair and just); and (3) whether the government would be prejudiced by a withdrawal of the plea.  Courts may also look to whether the defendant has raised a significant question about the voluntariness of the original plea.

*Id.* at 102–03 (internal citations and quotation marks omitted).

Consideration of the first three factors identified by the *Schmidt* court weighs against permitting Defendant to withdraw his plea.  First, Mr. Poupart does not assert his legal innocence as a basis for his motion to withdraw his plea: he challenges the voluntariness of his decision to plead guilty without denying his acknowledgment of guilt during the plea colloquy.  Furthermore, almost three months elapsed between Defendant's guilty plea on

May 25, 2012 and his first indication that he intended to move to withdraw at the August 21, 2012 hearing.  Defendant had moved to continue his sentencing three times without alluding to any perceived flaw in the entry of his guilty plea, and it was only when the Court denied his third motion for continuance that Mr. Poupart moved to withdraw his plea.  To the extent Defendant's decision was triggered by the imminent prospect of sentencing, as suggested by the Government, the Second Circuit has recognized that "a change of heart prompted by . . . the penalty that might be imposed is not a sufficient reason to permit a withdrawal of plea."  *Schmidt*, 373 F.3d at 102.  Finally, the Government contends that it would suffer significant prejudice if Defendant's motion were granted because it would be required to coordinate with three separate law enforcement agencies and various additional witnesses to again ramp up for trial where everyone had been told in May that the case would not be proceeding to trial as a result of Defendant's guilty plea.  Although Mr. Poupart has failed to present any evidence to show why these three factors do not weigh against granting his motion, he has asserted several grounds on which the voluntariness of his plea could be called into question, which must be considered.

> 1.    *Intimidation and Coercion*

In his motion to withdraw, Defendant claims that his plea was involuntary due to "on–going instances of intimidation" by one of his attorneys and because the Government gave him less than one hour to consider the plea agreement before he entered his change of plea.  (Def.'s Mot. to Withdraw ¶ 1.)[2]   However, in his plea agreement, Defendant

---

[2] Specifically, in his motion to withdraw his plea, Defendant made the following claims:

> The defendant cites on–going instances of intimidation by Counsel James
> Filan to accept a plea agreement.  Finlan's [sic] intimidating and often

acknowledged that he entered into the agreement "without threats, force, intimidation, or coercion of any kind." (Plea Agreement [Doc. # 142] at 7.)  During his plea colloquy, Mr. Poupart again confirmed that he had not been coerced into entering his plea:

| | |
|---|---|
| The Court: | Other than the promises that are in this written agreement, has anyone made any promises to you that have caused you to plead guilty? |
| The Defendant: | No. |
| The Court: | Has anybody threatened you or intimidated you in any way that has caused you to decide to plead guilty? |
| The Defendant: | No. |

(Plea Tr. [Doc. # 170] at 31.)  Furthermore, in his plea petition, Defendant represented that "I have not been threatened or forced in any way to plead guilty at this time or any other times." (Plea Pet. [Doc. # 143] ¶ 21.)  Mr. Poupart has presented no evidence of threats or coercion by his counsel to contradict his previous sworn assertions, offering only his belief that the strained attorney–client relationship hindered his ability to receive effective assistance of counsel prior to and during the decision–making process regarding the plea agreement.  As the Second Circuit has recognized, "[a] defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw [a] guilty plea." *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997).

Defendant also claims that he had less than an hour to consider his plea agreement

---

aggressive attitude towards the defendant had an effect on defendant's ability to clearly evaluate all the factors of the plea agreement.  Also on May 25, 2012, Assistant U.S. Attorney Anastasia King gave the Defendant less than one hour to consider all the factors in the plea agreement.  The defendant believes the strained attorney–client relationship hindered his ability to receive effective counsel prior to and during the decision making process related to the plea agreement.

(Def.'s Mot. to Withdraw ¶ 1.)

before he entered his change of plea.  However, the plea agreement that Defendant accepted was no different from the agreement he had been offered and had rejected almost two months earlier.  (*See* Gov't's Opp'n at 20.)   When that agreement was first offered, Defendant's attorneys traveled to Wyatt Detention Facility to present the agreement to their client and spent several hours consulting with him.  (*See* Exs. A, B, and C to *id.*)   Five days before jury selection, the Government met with Mr. Poupart in a reverse proffer session to preview for him its evidence against him and again offered this same agreement.  (*See id.* at 20.)  Thus Mr. Poupart was already familiar with the terms of the agreement and had previously discussed the terms with his lawyers.  After again reviewing the agreement for an hour with his attorneys and speaking with his wife, Defendant decided to accept the agreement.  (*Id.* at 20–21.)  During the guilty plea colloquy, when the Court asked if he "had enough opportunity and information to discuss your case with your attorneys," Defendant replied: "Yes."  (Plea Tr. at 8.)  This sequence of events does not support Defendant's claim of coercion, but instead suggests that when faced with the totality of the Government's evidence at the reverse proffer session, and in contemplation of the looming prospect of jury selection and trial, Mr. Poupart accepted the advisability of pleading guilty.  Thus, Defendant has failed to establish that his guilty plea was involuntary due to any form of coercion or intimidation by his attorneys or by the Government.

### 2.   *Ineffective Assistance of Counsel*

Defendant also contends that his plea was involuntary based on the ineffective assistance of his attorneys.  A claim of ineffective assistance of counsel challenging a guilty plea is assessed under the two–pronged standard first articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), and as further construed by *Hill v. Lockhart.  See Hill*, 474

U.S. 52, 58 (1985) ("We hold therefore that the two–part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel."). The first prong considers whether counsel's performance was objectively unreasonable "under prevailing professional norms." *Strickland*, 466 U.S. at 688. To satisfy this element, an error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *id.* at 687, and counsel's performance must have been "outside the wide range of professionally competent assistance," *id.* at 690. Second, the petitioner must affirmatively prove prejudice by showing that counsel's errors were so serious that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687, 694. In the context of a plea agreement, this means that "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

Defendant raises several grounds for his ineffective assistance of counsel claim. Specifically, Mr. Poupart claims that before he entered his guilty plea, his counsel failed to file several motions he had asked her to pursue: (1) a motion to dismiss due to breach of confidentiality arising from a discussion between one of the defense experts and an employee of the National Center for Missing and Exploited Children; (2) a motion to receive the debit card records of the victims' mother and review the victims' computers; (3) a motion to suppress evidence due to an allegedly broken chain of custody[3]; and (4) a motion

---

[3] After moving to withdraw his guilty plea, Defendant moved [Doc. # 175] *pro se* to suppress this evidence (a videotape of the forensic interview of his victims at the Yale Sex

challenging the original search warrant for Defendant's computers.  (*See* Def.'s Mot. to Withdraw ¶ 4–6.)  Each of these claims arises from defense counsel's representation prior to the entry of the guilty plea, and independent of her advice regarding the decision to plead guilty.   When seeking to withdraw a guilty plea,  a defendant "may not assert independent claims relating to [the deprivation of constitutional rights] that occurred prior to the entry of the guilty plea." *Torres*, 129 F.3d at 716 (quoting *United States v. Coffin*, 76 F.3d 494, 497 (2d Cir. 1996)) (alterations in original); *see also  United States v. Davis*, No. 3:07-cr-11, 2008 WL 5191814, at *6 (D. Conn. Nov. 26, 2008) ("[A] defendant cannot challenge the attorney's role in shaping the defendant's bargaining position, but he can challenge the attorney's advice about the bargaining position, because such a challenge links the knowing and voluntary nature of a defendant's plea decision to the attorney's conduct." (quoting *United States v. Parisi*, 529 F.3d 134, 138–39 (2d Cir. 2008)) (internal quotation marks omitted)).  Thus, for the purposes of evaluating Mr. Poupart's motion to withdraw his guilty plea "the issue [is] not the merits of these [independent] claims as such, but rather whether the guilty plea had been made intelligently and voluntarily with the advice of competent counsel." *Coffin*, 76 F.3d at 497–98 (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)) (alterations in original).

Mr. Poupart's claims regarding his attorney's failure to file these pre–trial motions do not relate to the advice he received during plea negotiations, but are rather "independent

___

Abuse Clinic) on the grounds that it was not logged into evidence until several months after it was seized by police and that therefore the chain of custody has been broken.  As the Court had not yet granted Defendant's motion to withdraw his guilty plea at the time he filed his suppression motion, the suppression motion was premature.  Furthermore, as is discussed above, the motion is moot in light of the Court's decision to deny Defendant's motion to withdraw his guilty plea.

claims relating to events occurring prior to the entry of the guilty plea." *Coffin*, 76 F.3d at 497. Defendant does not allege that the plea process was somehow deficient because these motions were not filed. Therefore, these claims do not provide legal support for the motion to withdraw Defendant's guilty plea. If Mr. Poupart had a good faith and specific basis for believing that his attorney's representation compromised his position going into the trial, his recourse would have been to request alternative representation (which he had done once before in this case).[4] However, even if the Court were to consider Defendant's argument that his counsel's failure to file these pre–trial motions left him no choice but to plead guilty, thus rendering his guilty plea involuntary, these claims would still fail the two–part *Strickland* test.

Defendant first claims that he received ineffective assistance of counsel because his attorney failed "to file a motion to dismiss due to breach in confidentiality and ethics" as a result of a conversation between a forensic expert hired by the defense and "an expert for the State of Connecticut, Joe Sudol" regarding his case. (Def.'s Mot. to Withdraw ¶ 3).[5] As the

---

[4] On September 28, 2010, the Federal Defender assigned to Mr. Poupart's case moved to withdraw as counsel, stating that: "Mr. Poupart instructed the undersigned counsel to file this motion." (Mot. to Withdraw [Doc. # 31] at 2.)

[5] In his motion, Defendant claims the following:
Attorney Gagne hired forensics expert Monique Ferraro for the defendant's case. Ferraro then disclosed to defendant and Attorney Gagne that she had discussed the defendant's case with an expert for the State of Connecticut, Joe Sudol. The conversation took place in a parking lot in New Haven, CT about the defendant's case without the defendant's counsel present. Ferraro stated that she "trusted Mr. Sudol's judgment because he was a former co–worker, and a personal friend." After being informed of Ferraro's conversation without counsel present, the defendant requested Attorney Gagne on May 29, 2011 to file a motion to dismiss due to breach in confidentiality and ethics. Attorney Gagne refused to file the motion, stating

Government clarifies in its response, Mr. Sudol works for the National Center for Missing and Exploited Children, and not the State of Connecticut.  (Gov't's Opp'n at 17 n.2.)  Mr. Poupart does not provide any explanation of how this conversation between his expert and an employee of a third–party organization would have resulted in prejudice to his case. There is no description of the substance of this conversation or how any of the details of his case could have been transmitted to the Government through Mr. Sudol.  Thus, there is nothing to suggest, nor does Defendant claim,[6] that if defense counsel had filed a motion to dismiss on these grounds Defendant would not have pled guilty.  Therefore, Mr. Poupart cannot establish prejudice under the second prong of the *Strickland* test.  *See Hill*, 474 U.S. at 59.

Defendant also claims that his counsel was ineffective in that she failed to request discovery information, the absence of which "severely hindered his ability to adequately support his defense.  (Def.'s Mot. to Withdraw ¶ 4.)[7]  Specifically, Defendant alleges that his

---

that she felt the motion was frivolous.  The defendant also believes it is not Attorney Gagne's right to decide whether the conversation between Ferraro and Sudol violated his rights to fair trial, rather it should be a question brought before a judge to decide.

(Def.'s Mot. to Withdraw ¶ 3.)

[6] In his motion, Defendant claims only that his attorney's failure to raise this issue violated his right to a fair trial.  (*See id.* ¶ 3 ("The defendant also believes it is not Attorney Gagne's right to decide whether the conversaion between Ferraro and Sudol violated his rights to a fair trial.").)  However, as a result of his plea agreement, Defendant waived his trial rights.  (Plea Tr. at 13 ("The Court: If you plead guilty, if I accept your plea, you are going to be giving up this constitutional right to a jury trial and the other rights I've been discussing.  You understand there will be no trial of any kind?  The Defendant: Yes, I understand.").)

[7] Defendant makes the following claims in his motion to withdraw his guilty plea: The defendant asked Attorney Gagne to file a motion to receive debit card

10

attorney's delay in requesting bank records from the victims' mother and access to the victims' computers in a timely manner led to the destruction of potentially exculpatory evidence.  As the Government points out, the legally required retention period for bank records is seven years.  (Gov't's Opp'n at 18 n.3.)  Defendant first asked his attorney to request the August 2003 bank records in November 2010, more than seven years after the records were generated.  Thus, even if his attorney had filed the motion upon Defendant's first request, the records would likely have been unavailable.  Furthermore, Defendant fails

---

records of [the victims' mother] for August 2003.  Defendant asked for the records on or about November 1, 2010 to assist in the creation of and supporting the timeframe [sic] of when the defendant's neices [sic] were in Maine.  Attorney Gagne stated that the defendant had to wait until he was indicted before these records could be requested.  It took nearly a year after being indicted on June 30, 2011 before the records were requested.  Once the records were finally requested on or about April 15, 2012 the defendant was informed that the records no longer existed because they had exceeded their retention period.  If they had been requested when originally asked for in November 2010 instead of April 2012, the records would have been still available.

Attorney Gagne was also asked on May 29, 2011 to have the defendant's nieces' computers examined by a forensic expert to prove the alleged images came from multiple data recoveries performed on their computers during 2004, 2005, and 2006.  Attorney Gagne informed the defendant that he was not allowed access to this information because it was an invasion of the alleged victim's privacy.  About a year later, Attorney Gagne finally asked for these computers and was told they no longer exist.

The defendant feels that Attorney Gagne [sic] diliberate [sic] refusals to file the necessary motion in a timely manner has severely hindered his ability to adequately support his defense.  As a direct result of these hindrances, the passage of time has now caused potential evidence that could have supported the defendant's defense to no longer be available.

(Def.'s Mot. to Withdraw ¶ 4.)

to allege what exculpatory material these records could have provided, other than his general assertion that the records would have helped establish a time frame for the case.  (*See* Def.'s Mot. to Withdraw ¶ 4.)

Similarly, Defendant first asked his attorney to request access to the victims' computers in May 2011.  (*Id.*)  Mr. Poupart alleges that a forensic examination of the computers would have established that "the alleged images came from multiple data recoveries that had been performed on their computers during 2004, 2005, and 2006."  (*Id.*) The Government states that the victims had discarded the requested computers when they started college, more than a year prior to May 2011 (Gov't's Opp'n at 18), and thus even if his attorney had requested access to the computers as soon as Defendant had raised the issue, they would not have been available for forensic examination at that time. Furthermore, Mr. Poupart does not explain how evidence that the images originated on his nieces' computers would have been exculpatory where he was charged with possession of child pornography and the images were found on his hard drive.  Defendant admitted during his plea colloquy:  "I know that I had images of child pornography on my computer, I know that I put these images on my computer, I know these images were of a minor engaged in sexual acts, and I know the images were made with materials that were transported in interstate commerce." (Plea Tr. at 39.)  The Court is entitled to credit these sworn statements over any unsupported contradictory claims made in his motion to withdraw.  *Torres*, 129 F.3d at 715.  Mr. Poupart has failed to establish that any of the allegedly exculpatory evidence would have been available for review even if his attorney had requested it immediately, and he fails to explain how this evidence would have assisted his defense or influenced his decision to plead guilty.  He therefore cannot establish prejudice

on these grounds. *See Hill*, 474 U.S. at 370 ("[W]here the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea.").

Defendant also claims that he received ineffective assistance of counsel because his attorney failed to move to suppress the videotape of a forensic interview of the victims on the basis that the chain of custody of the tape had allegedly been broken. (*See* Def.'s Mot. to Withdraw ¶ 5.)[8]   Mr. Poupart claims that because the evidence was tainted, the search warrant for his home was defective and that therefore all evidence seized in the case is "fruit of the poisonous tree." (*See id.* ¶ 6.)[9]   Even if the Court assumes for the purposes of this

---

[8] Defendant stated in his motion to withdraw his plea that:

Attorney Gagne was told on September 30, 2011 to file a motion that presented the fact that the Shelton Police CT (sic) Department had broken the chain of cusody [sic], and that the evidence in question should be considered tainted and unusable. Attorney Gagne then stated that she would not file a motion and she would "ask them about it at trial." Attorney Gagne also stated that "that [sic] it did not matter that the chain of custody was broken." Based on the current plea agreement standing, a trial has not happened, but a determination of the admissibility of the evidence given the chain of custody issue still needs to be made.

(*Id.* ¶ 5.)

[9] Defendant claims that:

On or about October 11, 2011, the defendant asked Attorney Gagne to file a motion regarding the original search warrant from the Shelton CT Police Department, which is based on evidence that was seized on August 27, 2007, in support of the affidavit for the search warrant, and not logged into evidence until seven months after the warrant is [sic] served, and has to be considered tainted. Everything from that warrant should be considered tainted and fruit of the poisonous tree.

13

motion that defense counsel's failure to move to suppress this evidence was "outside the wide range of professionally competent assistance," *Strickland*, 466 U.S. at 690 (which the Court does not believe on the basis of this record), and that the videotape was inadmissible, Mr. Poupart could not establish that he was prejudiced by his attorney's refusal to challenge the admissibility of this evidence. Detective Benjamin Trabka of the Shelton Police Department and Clinician Monica Vidro of Yale both observed the victims' interview at the Yale Sex Abuse Clinic when it was conducted. (*See* Search Warrant, Ex. D. to Gov't's Opp'n, ¶ 6.) Either of these two individuals, in addition to the Theresa Montelli, the clinician who conducted the interviews, and the victims themselves, could have provided first–hand testimony at trial regarding the interview. Similarly, because Detective Trabka was present during the interviews, his affidavit in support of the search warrant for Mr. Poupart's home would have provided ample probable cause for the warrant based on his observations alone, and any defect in the chain of custody of the videotape would not have affected the validity of the warrant. Thus, there is nothing to suggest that without the videotape Mr. Poupart would have been in a stronger position at trial, or that his attorney's failure to move to suppress the tape left him no choice but to plead guilty. Therefore, Defendant cannot establish prejudice under the second prong of the *Strickland* test on these grounds.

Defendant's last claim of ineffective assistance of counsel, however, does directly challenge the validity of the plea process. Mr. Poupart alleges that his attorney "did not fully and adequately explain the appeal stipulation in the plea agreement."[10]   (Def.'s Mot. to

---

(*Id.* ¶ 6.)

[10] Apparently, an appellate waiver was the subject of plea negotiations and was deleted from the final version of the plea agreement that Defendant signed. (*See* Ex. A to

Withdraw ¶ 7.)[11] Mr. Poupart states that "[w]hat was not made clear prior to the signing of
the agreement was whether the defendant has the right to appeal the amount of time
received, the charge itself or both." (*Id.*) Defendant claims he "was under the understanding
from his counsel that both [the sentence] and the charge could be appealed," and that his
misunderstanding "has played a major factor in whether or not the defendant would have
accepted this plea agreement." (*Id.*)

First, Mr. Poupart did not waive his appellate rights in his plea agreement, and thus
it is unclear what prejudice he is claiming as a result of his alleged failure to understand the
agreement, as it did not abridge any of his rights. Defendant's plea agreement states that
"[t]he parties reserve their respective rights to appeal and to oppose each other's appeal of
the sentence imposed as permitted by 18 U.S.C. § 3742." (Plea Agreement at 6.) During the

_____

Gov't's Opp'n.)

[11] Defendant states:

Attorney Gagne did not fully and adequately explain the appeal stipulation
in the plea agreement. Attorney Gagne's failure to explain this important
factor in the plea agreement, coupled with the intimidating and aggressive
behavior exhibited by counsel James Filan, along with the time restraints
placed on the defendant to enter a plea agreement by U.S. Assistant Attorney
[sic] King caused the defendant to enter into an agreement without sound,
clear, and effective counsel from the defendant's legal assistants.

The defendant entered into the plea agreement under the impression that the
right to appeal is present in the agreement. What was not made clear prior
to the signing of the agreement was whether the defendant has the right to
appeal the amount of time received, the charge itself, or both. The defendant
at the time of signing the plea agreement was under the understanding from
his counsel that both time and the charge could be appealed. This significant
misunderstanding has played a major factor in whether or not the defendant
would have accepted this plea agreement.

(Def.'s Mot. to Withdraw ¶ 7.)

plea colloquy, the Court explained:

> Both sides have reserved all appellate rights, and subject to the terms of your plea agreement, you may be able to appeal your conviction if you believe your guilty plea was somehow unlawful or involuntary or there is some other fundamental defect in the proceeding, including unconstitutionally ineffective assistance of counsel that you didn't waive by your guilty plea. And there's a statutory right to appeal your sentence if you think that sentence is contrary to law.

(Plea Tr. at 36.)  When asked by the Court if he had any questions regarding these rights, the Defendant replied: "No."  (*Id.* at 36–37.)  Thus, even if defense counsel was unclear when explaining whether he had "the right to appeal the amount of time received, the charge itself or both" (Def.'s Mot. to Withdraw at 4),  the Defendant was informed of his appellate rights (i.e., that he could appeal his sentence by statute and he could appeal his conviction if he believed there was a fundamental defect in the guilty plea proceeding) by the Court prior to entering his guilty plea.

Furthermore, Mr. Poupart confirmed that he was satisfied with his representation during his plea colloquy:

> The Court:       Are you satisfied to have [your lawyers] represent you?
> The Defendant:        Yes.
> The Court:     Is there any way in which you are not fully satisfied with their advice and representation?
> The Defendant:        No.

(Plea Tr. at 9.) Mr. Poupart had two experienced attorneys representing him during his plea negotiations.  According to the CJA vouchers they submitted for payment, together they spent more than 500 hours working on his case and met with him multiple times to advise him.  Defendant never gave any indication that he was dissatisfied with their representation in any way or that he had not understood his rights under the plea agreement.  Defendant's

current assertion that he did not understand his appellate rights, at odds with his sworn statements during the plea colloquy, is made for the first time in his motion to withdraw his plea challenging his understanding of a plea agreement that preserved, rather than waived, his appellate rights.  Mr Poupart therefore does not present a sufficient question as to the voluntariness of his guilty plea to require a hearing or to warrant granting his motion to withdraw.

As the Second Circuit has recognized, "[t]he standard for withdrawing a guilty plea is stringent because society has a strong interest in the finality of guilty pleas, and allowing withdrawal of pleas not only undermines confidence in the integrity of our judicial procedures, but also increases the volume of judicial work, and delays and impairs the orderly administration of justice."  *United States v. Doe*, 537 F.3d 204, 211 (2d Cir. 2008) (citing *United States v. Maher*, 108 F.3d 1513, 1529 (2d Cir. 1997)) (quotation marks omitted).  Mr. Poupart made a full and frank acknowledgment of his guilt during his plea colloquy (Plea Tr. at 39), and gave sworn statements that he was satisfied with his legal representation and had not been coerced into accepting the plea agreement (*id.* at 9, 31).  The Court gives significant weight to these statements because they were made under oath, on the record, and in the presence of his attorneys and the Court, and gives diminished weight to Defendant's self–interested, contradictory assertions made months after Defendant pled guilty.  *See Torres*, 129 F.3d at 715 ("A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea.").  Accordingly, Defendant's unsupported claims in his motion to withdraw do not meet the stringent standard for the withdrawal of his guilty plea.

III.    Conclusion

        For the reasons discussed above, Defendant's Motion to Withdraw Guilty Plea [Doc.

# 172] is DENIED.   In light of this ruling, Defendant's Motion for Hearing to Determine

Admissibility of Evidence [Doc. # 175] is DENIED as moot.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 18th day of October, 2012.

18